**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

IRIS ASSOCIATES, L.P.                                                    CIVIL ACTION

VERSUS                                                                        25-463-SDD-EWD

ROBERT C MILLER, ET AL.

<u>**RULING**</u>

This matter is before the Court on the *Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or Alternatively (A) Stay the Case or (B) Transfer the Case to the Bankruptcy Court* (hereinafter, "the *Motion*") filed by Defendants Robert C. Miller ("Miller") and Millco Walker, LLC ("Millco") (collectively, "Defendants").[1] Plaintiff Iris Associates, L.P. ("Iris" or "Plaintiff") filed an *Opposition*,[2] and Defendants filed a *Reply*.[3] For the following reasons, the *Motion* shall be granted in part and denied in part.

## I.     ALLEGATIONS

This case arises out of the sale and subsequent lease of certain commercial real estate in Walker, Louisiana ("the Walker Property"). Plaintiff alleges the following facts. Iris's principal business is commercial real estate investment.[4] In 2023, Iris wanted to purchase properties with long-term leases, ideally with financially sound tenants who were established fast food restaurant operators.[5] Iris's primary considerations in selecting these investment properties were the financial viability of the lessee and the remaining lease term.[6]

---

[1] Rec. Doc. 21.
[2] Rec. Doc. 25.
[3] Rec. Doc. 26.
[4] Rec. Doc. 7, ¶ 11.
[5] *Id.* at ¶ 13.
[6] *Id.*

Miller is "a member, officer, and/or company insider of Miracle Restaurant Group, LLC" ("Miracle").[7] He is also a real estate developer.[8] By 2023, Miracle "owned and operated over twenty Arby's restaurants."[9] Miracle and Miller developed a build-to-suit arrangement to develop new Arby's locations for Miracle.[10] They engaged in one such agreement to develop the Walker Property.[11] As was typical under their build-to-suit arrangement, Miller organized and controlled a "special purpose limited liability company" ("special purpose LLC"), i.e., Millco, to develop the new Arby's location.[12] Millco then purchased the Walker Property and began construction and development of the restaurant,[13] and Miracle entered into a twenty-year lease of this property.[14]

Miller and Millco subsequently marketed the Walker Property to Iris as an Arby's restaurant under a twenty-year lease with Defendants' "represented affiliate and long-time Arby's operator, Miracle."[15] Without a strong twenty-year lease, Iris would not have been interested in the Walker Property because its value would have been around $1.5 million less than the $2.2 million list price.[16] Defendants did not offer to assign the pre-existing twenty-year lease to Iris as part of the sale of the Walker Property.[17] Instead, Defendants represented that they, as insiders with Miracle, would facilitate a new twenty-year lease between Miracle and Iris at the closing of the sale.[18]

---

[7] *Id.* at ¶ 6.
[8] *Id.* at ¶ 8.
[9] *Id.* at ¶ 7.
[10] *Id.* at ¶ 8.
[11] *Id.* at ¶¶ 9–10.
[12] *Id.* at ¶¶ 8, 10.
[13] *Id.* at ¶ 10.
[14] *Id.* at ¶ 14.
[15] *Id.*
[16] *Id.*
[17] *Id.* at ¶ 15. In previous sales, the special purpose LLCs sold the Arby's locations to third-party landlords, who assumed the pre-existing twenty-year leases on the properties. *Id.* at ¶ 8.
[18] *Id.*

To induce the sale, Miller and Millco presented Iris with Miracle's financial records to evidence Miracle's success and viability as a long-term tenant.[19] The financials showed Miracle was "coming out of the COVID-19 pandemic on solid financial footing," with an eighteen-year history of operating twenty-eight Arby's locations in multiple states and a cash flow gain of more than $2.7 million over the prior two years.[20] Despite these financial records, Defendants, as insiders of Miracle, knew that Miracle was in "perilous financial condition."[21] Defendants also knew that Miracle would be unable to fulfill its obligations under the new lease they were marketing to Iris.[22] They, however, did not disclose Miracle's true financial condition to Iris, despite their knowledge.[23] Defendants instead actively promoted the new twenty-year lease with Miracle because they knew Iris's valuation of the Walker Property mainly hinged upon the revenue from the lease.[24]

On October 19, 2023, and based on Miller and Millco's representations about Miracle, Iris purchased the Walker Property from Millco for $2,075,000.[25] Iris would not have purchased the Walker Property absent Defendants' representations about Miracle's financial condition.[26] Additionally, Iris and Miracle entered into a new triple-net,[27] twenty-year commercial lease of the Walker Property on October 19, 2023.[28] On June 20, 2024,

---

[19] *Id.* at ¶ 17.
[20] *Id.*
[21] *Id.* at ¶ 31.
[22] *Id.*
[23] *Id.* at ¶¶ 19, 32.
[24] *Id.* at ¶ 31.
[25] *Id.* at ¶ 20.
[26] *Id.* at ¶ 33.
[27] A triple net lease is a "lease in which the lessee pays all the expenses, including mortgage interest and amortization, leaving the lessor with an amount free of all claims." *Lease*, BLACK'S LAW DICTIONARY (12th ed. 2024).
[28] Rec. Doc. 7, ¶ 21.

Miracle stopped paying rent and filed a voluntary Chapter 11 petition for bankruptcy.[29] Miracle formally rejected the lease on August 15, 2024.[30]

Iris attempted to secure a suitable replacement tenant, but the Walker Property remained unleased for months.[31] Iris's replacement tenant was a local, less established restaurant chain, and the lease was made "on substantially less beneficial terms."[32] Specifically, the replacement lease is for seven and a half years, as opposed to twenty, and the monthly rental payments are lower than those in the Miracle lease.[33] Additionally, the Walker Property generated no rent for eight and a half months, during which time it incurred tax, insurance, and other expenses that Miracle would have borne under the lease marketed and facilitated by Defendants.[34]

On May 27, 2025, the United States Bankruptcy Court for the Eastern District of Louisiana ("the Bankruptcy Court") issued *Findings of Fact and Conclusions of Law Confirming the Debtor's Third Amended Subchapter V Plan of Reorganization* ("the Plan") in Miracle's bankruptcy case.[35] Plaintiff then filed this lawsuit against Defendants on May 29, 2025, alleging Louisiana law causes of action for fraud, violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), negligent misrepresentation, and alternatively, unjust enrichment and detrimental reliance.[36] Pursuant to this Court's order,[37] Plaintiff filed its *First Amended and Restated Complaint* ("*Amended Complaint*") to adequately allege the parties' citizenship for purposes of

---

[29] *Id.* at ¶ 22; *In re Miracle Rest. Grp., LLC*, No. 24-11158 (Bankr. E.D. La. filed June 20, 2024).
[30] *Id.* at ¶ 22.
[31] *Id.* at ¶ 23.
[32] *Id.*
[33] *Id.* at ¶¶ 21, 24.
[34] *Id.* at ¶ 25.
[35] *In re Miracle Rest. Grp., LLC*, No. 24-11158 (Bankr. E.D. La. May 27, 2025).
[36] Rec. Doc. 1.
[37] Rec. Doc. 4.

diversity jurisdiction.[38] Defendants' *Motion* now seeks to dismiss all claims raised in the *Amended Complaint*.[39]

## II.    LAW AND ANALYSIS

### A.  Rule 12(b)(6) Standard

When deciding a Rule 12(b)(6) motion to dismiss, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[40] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[41] In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[42]

A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[43] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[44] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[45] Furthermore, while the court must accept well-pleaded facts as true, it "need

---

[38] Rec. Doc. 7.
[39] Rec. Doc. 21.
[40] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[41] *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).
[42] *Twombly*, 550 U.S. at 555 (2007) (internal citations omitted).
[43] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twomby*, 550 U.S. at 557).
[44] *Id.*
[45] *Id.*

not 'strain to find inferences favorable to the plaintiff.'"[46] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[47]

When evaluating a Rule 12(b)(6) motion, the Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[48] The Court may also consider documents attached to a motion to dismiss if those documents "are referred to in the plaintiff's complaint and are central to her claim."[49] In the *Amended Complaint*, Plaintiff references Miracle's bankruptcy case.[50] Additionally, the parties' briefs on the *Motion* reference the bankruptcy case and the Bankruptcy Court's Plan.[51] Furthermore, the Court may "consider matters of public record," such as the Bankruptcy Court's Plan from the Miracle bankruptcy proceedings.[52] Therefore, the Court may consider the Plan in its analysis of the *Motion*.

Plaintiff attached multiple documents to its *Opposition*, including an excerpt from the Plan.[53] As the Court has decided to consider the Plan, the Court sees no reason to consider Plaintiff's excerpt from it. The Court also chooses to exclude the remaining attachments to the *Opposition* as matters outside the pleadings.

Additionally, "[t]he law is well-settled that arguments in a brief are not a substitute for properly plead allegations: 'it is axiomatic that a complaint cannot be amended by

---

[46] *Stringer v. Town of Jonesboro*, 986 F.3d 502, 512 (5th Cir. 2021) (quoting *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005)).

[47] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[48] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[49] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)).

[50] Rec. Doc. 7, ¶¶ 22, 28.

[51] Rec. Doc. 21-1, pp. 3–10, 22–23; Rec. Doc. 25, pp. 16–17; Rec. Doc. 26, pp. 9–11.

[52] *Ramos v. Erwin*, 723 F. Supp. 3d 529, 535 (S.D. Tex. 2024) (citing *Norris v. Hearst Tr.*, 500 F.3d 454, 461 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

[53] Rec. Doc. 25-1–Rec. Doc. 25-9.

briefs in opposition to a motion to dismiss.'"[54] Because "a motion to dismiss is evaluated on the operative complaint, not a plaintiff's opposition,"[55] the Court will not consider any factual allegations raised in the briefs but will instead rely solely on the factual allegations in the *Amended Complaint*.

### B. Bankruptcy Injunction

Defendants insist that Plaintiff would not have a case if Miracle had not rejected the lease.[56] They argue that Plaintiff, therefore, "dressed up" its claims to appear unrelated to the bankruptcy case and outside the scope of the injunction.[57] If the Court does not dismiss the case, Defendants ask that it either (1) stay this case until Plaintiff receives an order from the Bankruptcy Court regarding the injunction's applicability or (2) transfer this case to the Eastern District of Louisiana for referral to the Bankruptcy Court.[58] The Court finds the Plan's injunction provision does not apply to Plaintiff's claims, so Defendants' requests are denied.

Plaintiff's allegations indicate Plaintiff's grievance is based on Defendants' alleged misrepresentation of Miracle's financial wellness, which enticed Plaintiff to buy the Walker Property. Based on Plaintiff's factual allegations, Miracle filing for bankruptcy and rejecting the lease were acts that put Plaintiff on notice of Defendants' alleged misrepresentations. Plaintiff's claims, therefore, arise from Defendants' alleged acts, not those of Miracle.

---

[54] *Rainey v. J&S Truck Sales, L.L.C.*, 614 F. Supp. 3d 293, 302 n.56 (M.D. La. 2022) (quoting *Sheppard v. Cheeks*, No. 6:19-cv-01366, 2020 WL 2301367, at *2 (W.D. La. Apr. 13, 2020), *report and recommendation adopted*, 2020 WL 2248134 (W.D. La. May 7, 2020), *aff'd*, No. 20-30355, 2022 WL 964202 (5th Cir. Mar. 30, 2022)).

[55] *Belden Investments, L.L.C. v. Pharaoh Oil & Gas, Inc.*, No. 22-62, 2023 WL 5989528, at *6 (M.D. La. Sept. 14, 2023) (quoting *Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 677–78 (M.D. La. 2019)).

[56] Rec. Doc. 21-1, p. 22.

[57] *Id.*

[58] *Id.* at pp. 22–23.

Thus, even without the rejection of the lease, the basis of Plaintiff's claims—Defendants' alleged misrepresentations—remains. Accordingly, Plaintiff's claims in this case, as alleged in the *Amended Complaint*, are not claims for rejection of Miracle's lease but are for Defendants' alleged misrepresentations that induced Plaintiff into a sale.

Defendants also assert that because they are raising the injunction provision in the Plan, the Bankruptcy Court is the appropriate court to interpret that provision and determine whether Plaintiff's claims fall within the scope of the injunction.[59] As Plaintiff correctly notes, the Plan makes "expressly clear that the injunction does not apply to claims not addressed in the Plan."[60] Under the injunction, "all holders of discharged claims" against Miracle are enjoined from pursuing any debt or claim that "is specifically addressed within the Plan."[61] Though the Plan mentions Plaintiff's tort claims "against one or more of the Debtor's directors or officers,"[62] Plaintiff's claims against Defendants in the case sub judice—i.e., fraud, LUTPA violation, negligent misrepresentation, unjust enrichment, and detrimental reliance—were not specifically addressed in the Plan.

Furthermore, the Bankruptcy Court's order specifically provides that creditors such as Plaintiff "shall retain the right to pursue any" insider "for any claims not addressed in the Plan," and that "no non-debtor third party, including, but not limited to, . . . insiders . . . shall be entitled to the benefits of the discharge" nor shall they "receive any release of any claim to which they are otherwise liable."[63] The injunction, therefore, does not apply to Plaintiff's claims against Defendants because those claims were not "specifically

---

[59] *Id.* at p. 12.
[60] Rec, Doc. 25, p. 16.
[61] *In re Miracle Rest. Grp., LLC*, No. 24-11158, p. 8 (Bankr. E.D. La. May 27, 2025).
[62] *Id.* at p. 47, n.7. The Plan notes, "Iris asserts that it retains tort claims against one or more of the Debtor's directors or officers," but Iris withdrew its objection to the Plan after getting Miracle to agree to language confirming that Iris may pursue those claims that are "not treated by the terms of the Plan." *Id.*
[63] *Id.* at p. 8. (emphasis omitted).

addressed within" or "treated by the terms of the Plan."[64] Accordingly, this case is not enjoined by the Bankruptcy Court's order and need not be stayed or transferred.

### C. Causes of Action

The *Amended Complaint* sets forth four causes of action: fraud (La. Civ. Code art. 1953), unfair trade practices (La. R.S. 51:1405), negligent misrepresentation, and alternatively, unjust enrichment (La. Civ. Code art. 2298) and detrimental reliance (La. Civ. Code art. 1967).

### 1. Count One: Fraud

Typically, when a complaint involves a fraud allegation, Rule 9(b) of the Federal Rules of Civil Procedure requires the plaintiff to "state with particularity the circumstances constituting fraud."[65] However, the Fifth Circuit has a more relaxed standard for pleading fraud by omission.[66] Under this relaxed standard, "the claimant must plead: (1) the type of facts omitted; (2) the place in which those omitted facts should have appeared; and (3) how omitting those facts made the representations misleading."[67]

Defendants argue the *Amended Complaint*'s fraud allegations should be dismissed because they do not satisfy Rule 9(b).[68] Specifically, they assert, "there are no particularized facts" alleging that "either of the Defendants were aware that Miracle either had financial problems or knew that Miracle would file the Bankruptcy Case" or that "either Defendant performed a fraudulent act prior to or in connection with the closing of the sale."[69] Defendants again insist that Plaintiff's case "would not exist" if Miracle did not

---

[64] *Id.*
[65] *Retina & Vitreous of La., Inc. v. Mason*, No. 23-158, 2024 WL 3307848, at *4 (M.D. La. Mar. 1, 2024).
[66] *Delaware Valley Fish Co. v. 3South LLC*, 601 F. Supp. 3d 7, 20 (M.D. La. 2022).
[67] *Id.* at 25 (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)).
[68] Rec. Doc. 21-1, p. 14.
[69] *Id.* at p. 16.

reject the lease on the Walker Property,[70] which is an argument this Court has already rejected. Plaintiff counters that the less stringent pleading requirements for fraud by omission should apply and that Plaintiff has satisfied this standard.[71]

Based on the face of the *Amended Complaint*, Plaintiff's fraud claim is a claim of fraud by omission. Specifically, Plaintiff alleges, "Defendants suppressed the truth regarding Miracle Group's dire financial condition from Iris" and "Iris would not have purchased the [Walker] Property" if Defendants had not suppressed the information.[72] Therefore, the Court will apply the less stringent fraud by omission pleading standard in its Rule 12(b)(6) analysis.

The *Amended Complaint* alleges knowing omissions, i.e., Miracle's "true financial condition."[73] Specifically, Defendants knew about Miracle's "perilous financial condition and its inability to fulfil a [twenty]-year lease of the [Walker] Property" but failed to disclose this information.[74] Defendants allegedly omitted this information when they were marketing the Walker Property to Plaintiff and when they provided Plaintiff with financial information that portrayed Miracle as a company on "solid financial footing."[75] These omissions occurred in 2023 in the lead up to the October 19, 2023, sale and renewed lease of the Walker Property.

Plaintiff also adequately pled how omitting information about Miracle's poor financial situation made Defendants' representations misleading. Specifically, Plaintiff emphasized that Defendants knew Plaintiff's valuation of the Walker Property "hinged

---

[70] *Id.*
[71] Rec. Doc. 25, p. 19.
[72] Rec. Doc. 7, ¶¶ 32–33.
[73] *Id.* at ¶ 19.
[74] *Id.* at ¶ 31.
[75] *Id.* at ¶¶ 17–18.

primarily upon the revenues to be derived from" the twenty-year lease with Miracle.[76] And Plaintiff states it would not have bought the property at all, much less for the $2,075,000 purchase price, if it knew the twenty-year lease with Miracle was not financially viable.[77]

The next question is whether the Plaintiff's allegations—taken as a whole—show that Defendants had a duty to disclose the information to Plaintiff. As this Court has previously noted, there is a "general rule that 'a partial disclosure of information gives rise to the duty to provide correct information.'"[78] Here, Plaintiff alleges Defendants provided it with financial information "to evidence the success and viability of Miracle Group as a long-term tenant."[79] Plaintiff further alleges that both Defendants, as insiders,[80] knew and failed to disclose that Miracle's "true financial condition" was different than what was presented in the financial information they provided to Plaintiff.[81]

The Court must accept Plaintiff's well-pled facts as true and view them in the light most favorable to Plaintiff.[82] Thus, Plaintiff has sufficiently alleged that Defendants made partial disclosures regarding Miracle's financial condition, which created a duty to disclose the whole truth to Plaintiff. Accordingly, Plaintiff has plausibly pled fraud by omission.

### 2.  Count Two: LUTPA Violation

#### a.  Prescription

"Ordinarily, the burden of proof is on the party pleading prescription; however, when the plaintiff's petition has clearly prescribed on its face, as here, the burden shifts

---

[76] *Id.* at ¶ 31.
[77] *Id.* at ¶ 33.
[78] *Delaware Valley Fish Co.*, 601 F. Supp. 3d at 26 (quoting *Trinity Med. Servs., L.L.C. v. Merge Healthcare Sols., Inc.*, No. 17-592, 2019 WL 3240048, at *10 (M.D. La. July 18, 2019)).
[79] Rec. Doc. 7, ¶ 17.
[80] *Id.* at ¶ 15.
[81] *Id.* at ¶ 19.
[82] *Doe as Next Friend Doe v. Jewell*, 151 F.4th 236, 244 (5th Cir. 2025).

to the plaintiff to prove that the prescription has been suspended or interrupted."[83] "Courts assessing the applicability of *contra non valentem* must focus on the reasonableness of the tort victim's action or inaction."[84]

LUTPA specifically dictates that the one-year prescriptive period begins running "from the time of the transaction or act which gave rise to this right of action."[85] Plaintiff's LUTPA cause of action arises from Defendants' alleged misrepresentations that induced Plaintiff to buy the Walker Property and to enter into a lease with Miracle. These transactions occurred on October 19, 2023. Plaintiff filed this lawsuit on May 29, 2025.[86] Thus, on the face of the *Complaint*, Plaintiff's LUTPA cause of action has prescribed. Plaintiff, therefore, has the burden to prove that prescription has been suspended or interrupted. Plaintiff has satisfied this burden.

"For claims subject to prescription, '*contra non valentem* applies an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise [its] cause of action when it accrues.'"[87] Here, Plaintiff's LUTPA claim is based on Defendants' alleged concealment of information about Miracle's financial situation and misrepresentation of Miracle as a financially sound tenant that would lease the Walker Property for twenty years.[88] Defendants allegedly knew Plaintiff mainly valued the Walker Property for the lease revenue.[89] These allegations allow the Court to infer that

---

[83] *Retina & Vitreous of La., Inc.*, 2024 WL 3307848, at *16 (quoting *Messenger v. Boston Sci. Corp.*, No. 18-827, 2020 WL 60242 at *13 (M.D. La. Jan. 6, 2020)).

[84] *Ellis v. Evonik Corp.*, 604 F. Supp. 3d 356, 364 (E.D. La. 2022) (citing *Griffin v. Kinberger*, 507 So. 2d 821, 824 n.2 (La. 1987)).

[85] La. R.S. 51:1409(E).

[86] Rec. Doc. 1.

[87] *Jeanes v. McBride*, No. 16-1259, 2019 WL 2387863, at *13 (W.D. La. June 4, 2019) (quoting *Borel v. Young*, 2007-0419 (La. 11/27/07), 989 So. 2d 42, 49, *on reh'g* (July 1, 2008)).

[88] Rec. Doc. 7, ¶¶ 38–39.

[89] *Id.*

Defendants' acts were intended to induce Plaintiff to buy the Walker Property from Defendants.

Though the transactions culminated on October 19, 2023, Defendants allegedly concealed the information that would make Plaintiff aware that such a cause of action was available. Specifically, based on the factual allegations in the *Amended Complaint*, Plaintiff learned of Miracle's poor financial condition, and therefore Defendants' misrepresentations, only once Miracle filed for bankruptcy on June 20, 2024, and formally rejected the lease on August 15, 2024.[90] Thus, Plaintiff did not have actual or constructive knowledge of the potential LUTPA violation until June 20, 2024, at the earliest. Accordingly, accepting Plaintiff's well-pled factual allegations as true, Plaintiff had good cause for not filing this lawsuit within one year of October 19, 2023, and *contra non valentem* applies. Plaintiff's May 29, 2025, lawsuit was filed within one year of June 20, 2024, so Plaintiff's LUTPA claim has not prescribed.

b.  Sufficiency of Pleading

LUTPA provides a civil cause of action to recover actual damages to "[a]ny person who suffers any ascertainable loss of money or movable property" due to another person's use or employment of "an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405."[91] Section 51:1405(A) declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Courts must determine "on a case-by-case basis" what conduct constitutes an "unfair trade practice" and "have repeatedly held that, under this statute, the plaintiff must show the alleged conduct offends established public policy and ... is immoral,

---

[90] *Id.* at ¶ 22.
[91] La. R.S. 51:1409.

unethical, oppressive, unscrupulous, or substantially injurious."[92] Additionally, for purposes of LUTPA, "a trade practice that amounts to fraud, deceit, or misrepresentation is 'deceptive.'"[93]

Defendants argue the *Amended Complaint* lacks plausible allegations that Defendants had a motivation to harm Plaintiff.[94] As this Court noted above, the Fifth Circuit has already rejected the argument that "conduct does not violate LUTPA unless it is undertaken with the specific intent to harm the competitor."[95] "Instead, the Fifth Circuit stated that 'the statute merely requires a showing of some element of fraud, misrepresentation, deception or other unethical conduct' by a defendant."[96] Therefore, Defendants' argument fails.

Defendants also argue Plaintiff's allegations do not establish, without drawing unreasonable inferences, that any of Defendants' acts were egregious enough for the LUTPA claim to survive a Rule 12(b)(6) dismissal.[97] The Court disagrees. Accepting the facts alleged as true, Defendants intentionally misrepresented Miracle's financial situation to induce Plaintiff to buy the Walker Property from Defendants. Specifically, Defendants knew Plaintiff's interest in the sale depended on a twenty-year lease with Miracle, so they chose not to disclose information about Miracle's "perilous financial condition" and instead provided Plaintiff with misleading financial records.[98] These acts led Plaintiff to purchase

---

[92] *Hunters Run Gun Club, LLC v. Baker*, No. 17-176, 2019 WL 3240044, at *1 (M.D. La. July 18, 2019) (quoting *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1059).

[93] *Id.* (citing *Total Safety v. Rowland*, No. 13-6109, 2014 WL 6485641, at * 4 (E.D. La. Nov. 18, 2014)).

[94] Rec. Doc. 21-1, p. 18.

[95] *Delaware Valley Fish Co.*, 601 F. Supp. 3d at 24 (citing *Industrias Magromer Cueros y Pieles S.A. v. Louisiana Bayou Furs Inc.*, 293 F.3d 912, 921–22 (5th Cir.), *decision clarified on denial of reh'g*, 310 F.3d 786 (5th Cir. 2002)).

[96] *Id.* (quoting *Louisiana Bayou Furs*, 293 F.3d at 922).

[97] Rec. Doc. 21-1, p. 18.

[98] Rec. Doc. 7, ¶¶ 38–39.

the property and lease it to Miracle for a twenty-year term.[99] Taking these allegations as true, Plaintiff has plausibly pled that Defendants' misrepresentations fraudulently induced the sale to Plaintiff and were sufficiently unscrupulous to support a LUTPA cause of action. Thus, the *Motion* will be denied as to the LUTPA claim.

### 3. Count Three: Negligent Misrepresentation

"In order for a plaintiff to recover for negligent misrepresentation, there must be a legal duty on the part of the defendant to supply correct information, a breach of that duty, and damage to plaintiff caused by the breach."[100]

Defendants argue the negligent misrepresentation claim against Miller must be dismissed because there is no allegation of privity of contract between Miller and Plaintiff, and he therefore owed no duty to Plaintiff.[101] In Louisiana, even if a party has no initial duty to disclose information, he assumes a duty to disclose the whole truth "if he volunteers to speak and to convey information which may influence the conduct of the other party."[102] As discussed in the fraud analysis above, Plaintiff has sufficiently alleged that Defendants voluntarily conveyed partial financial information to induce the sale of the Walker Property, which created a duty to disclose the whole truth about Miracle's financial situation. Thus, Defendants' argument fails.

Defendants also argue the *Amended Complaint* lacks plausible factual allegations that Defendants supplied false information or knew that Miracle would file for bankruptcy and reject the lease.[103] This argument also fails. The Court has already acknowledged

---

[99] *Id.* at ¶¶ 20–21, 40.

[100] *Andrade v. Stewart*, No. 20-886, 2022 WL 1286230, at *7 (M.D. La. Jan. 5, 2022), *report and recommendation adopted,* 2022 WL 731514 (M.D. La. Mar. 10, 2022).

[101] Rec. Doc. 21-1, pp. 19–20.

[102] *Trinity Med. Servs., L.L.C.*, 2019 WL 3240048, at *9 (quoting *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 419 (5th Cir. 2008)).

[103] Rec. Doc. 21-1, p. 20.

that the *Amended Complaint* sufficiently alleges Defendants' "actual knowledge of Miracle Group's perilous financial condition,"[104] failure to disclose that information to Plaintiff, and false portrayal of Miracle as financially healthy.[105] Thus, Plaintiff has plausibly pled factual allegations that Defendants supplied false information. Therefore, this argument also fails. "[T]he movant has the burden to show dismissal is warranted under Rule 12(b)(6)."[106] Defendants have failed to carry this Rule 12(b)(6) burden.  Accordingly, the *Motion* is denied as to the negligent misrepresentation claim.

### 4.  Count Four: Unjust Enrichment and Detrimental Reliance

#### a.  Unjust Enrichment

To state a claim for unjust enrichment under Louisiana law, a plaintiff must plead five elements: (1) enrichment of the defendant; (2) impoverishment of the plaintiff; (3) a causal relationship between the defendant's enrichment and the plaintiff's impoverishment; (4) "an absence of 'justification' or 'cause' for the enrichment and impoverishment; and (5) a lack of other remedy at law."[107]

Defendants correctly argue the *Amended Complaint* fails to plead the fifth element, lack of alternative remedies.[108] Plaintiff must "sufficiently allege facts demonstrating every element in order to state a claim for unjust enrichment."[109] Plaintiff has failed to do so. Therefore, Plaintiff's unjust enrichment claim must be dismissed for failure to state a claim.

---

[104] Rec. Doc. 7, ¶ 45.

[105] *Id.* at ¶¶ 19, 45–46.

[106] *Cantu v. Guerra*, No. 20-CV-0746, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021) (citing *Ehiemua-Wiggins v. Napolitano*, No. 09-2286, 2010 WL 519704, at *1 (S.D. Tex. Feb. 8, 2010)).

[107] *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 291 (5th Cir. 2024) (citing *Baker v. Maclay Props. Co.*, 94-1529, p. 18–19 (La. 1/17/95), 648 So. 2d 888, 897).

[108] Rec. Doc. 21-1, p. 21.

[109] *Shaw*, 93 F.4th at 291 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016)).

b. Detrimental Reliance

Louisiana Civil Code article 1967 governs claims for detrimental reliance.[110] Article 1967 provides, in pertinent part, "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying."[111] To state a claim for detrimental reliance, Plaintiff must plead "(1) a representation by word or conduct, (2) justifiable reliance, and (3) a change in position to one's detriment resulting from the reliance."[112] Louisiana does not favor detrimental reliance claims, so they "must be examined 'with care and strictness.'"[113]

Defendants argue Plaintiff failed to plausibly plead detriment because Plaintiff owns the Walker Property and currently has a tenant.[114] Plaintiff counters that its detriment was the months without rent and the lowered value of the Walker Property after having to secure a replacement tenant at a lower rent and for a shorter term.[115]

Plaintiff alleges that it purchased the Walker Property "at a grossly inflated price" due to Plaintiff's reliance on Defendants' representations regarding Miracle's viability as a long-term tenant.[116] Additionally, Plaintiff claims the Walker Property generated no rent and incurred other expenses for eight and a half months.[117] Due to Defendants' alleged representations, which induced Plaintiff to buy the property and enter into a lease with

---

[110] *Russo v. OnPath Fed. Credit Union*, 23-537 (La. App. 5 Cir. 5/29/24), 388 So. 3d 1274, 1280.
[111] La. Civ. Code art. 1967.
[112] *Doucet-Speer, APLC v. State Farm Fire & Cas. Co.*, No. 20-513, 2025 WL 1672383, at *4 (M.D. La. June 12, 2025) (quoting *Allstate Life Ins. Co. v. Marcelle*, No. 24-30349, 2025 WL 789551, at *3 (5th Cir. Mar. 12, 2025)).
[113] *Shaw*, 93 F.4th at 290 (quoting *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 232 (5th Cir. 2018); *Allbritton v. Lincoln Health Sys.*, 45,537, p. 5 (La. App. 2 Cir. 10/20/10), 51 So. 3d 91, 95).
[114] Rec. Doc. 21-1, p. 21.
[115] Rec. Doc. 25, p. 28.
[116] Rec. Doc. 7, ¶ 55.
[117] *Id.* at ¶ 25.

Miracle, Plaintiff expected Miracle to cover said rent and expenses for twenty years.[118] With the replacement lease rather than Miracle's twenty-year lease, the Walker Property is allegedly valued at $1.2 million, rather than the $2,075,000 Plaintiff paid for it.[119] Considering these factual allegations, Plaintiff has plausibly plead a detriment.

Defendants also argue Plaintiff insufficiently pleads detrimental reliance because it does not allege Defendants have taken a position contrary to a prior representation.[120] However, Plaintiff is not required to make such an allegation because it is not an element of detrimental reliance.[121] "[T]he movant has the burden to show dismissal is warranted under Rule 12(b)(6)."[122] Defendants have not satisfied their burden under Rule 12(b)(6). Therefore, the *Motion* is denied as to the detrimental reliance claim.

### D. Leave to Amend

Plaintiff's *Opposition* asks for leave to amend the *Amended Complaint* "to plead with more particularity any claims the Court determines are currently insufficient."[123] The only claim the Court dismissed is the unjust enrichment claim. Unjust enrichment is a subsidiary remedy, so it "shall not be available if the law provides another remedy."[124] As discussed above, other legal remedies are available in this case. "Regardless of plaintiff's ultimate success on these additional claims, he is precluded from bringing an action for

---

[118] *Id.*

[119] *Id.* at ¶ 26.

[120] Rec. Doc. 21-1, pp. 21–22.

[121] The elements of detrimental reliance are (1) a representation, (2) justifiable reliance, and (3) a change in position to one's detriment resulting from the reliance. *Doucet-Speer, APLC*, 2025 WL 1672383, at *4 (quoting *Marcelle*, 2025 WL 789551, at *3).

[122] *Cantu*, 2021 WL 2636017, at *1 (citing *Ehiemua-Wiggins*, 2010 WL 519704, at *1).

[123] Rec. Doc. 25, p. 28.

[124] *Semco, LLC v. Grand Ltd.*, 16-342 (La. App. 5 Cir. 5/31/17), 221 So.3d 1004, 1030.

unjust enrichment."[125] Thus, unjust enrichment is not an available remedy in this case, so any amendment would be futile.[126] Accordingly, Plaintiff's request for leave to amend is denied as futile.

### III.    CONCLUSION

For the foregoing reasons, *Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or Alternatively (A) Stay the Case or (B) Transfer the Case to the Bankruptcy Court*[127] is **GRANTED IN PART** and **DENIED IN PART**. The *Motion* is **GRANTED** to the extent that it seeks dismissal of the unjust enrichment claim, and Plaintiff's claim for unjust enrichment is dismissed with prejudice. The *Motion* is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff's request for leave to amend[128] the *Amended Complaint* is **DENIED**.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this __26th_ day of _____May_____, 2026.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[125] *Shargian v. Shargian*, 591 F. Supp. 3d 100, 110 (E.D. La. 2022) (citing *Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 F. App'x 440, 443–44 (5th Cir. 2014) (per curiam) ("[T]he important question is whether another remedy is available, not whether the party seeking a remedy will be successful.")).
[126] *See Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (stating that leave to amend may be denied as futile if the proposed amended pleading would be subject to dismissal).
[127] Rec. Doc. 21.
[128] Rec. Doc. 25, p. 28.